OPINION *Page 2 
{¶ 1} Appellant, Gardner G. Deegan, timely appeals his convictions rendered in the Belmont County Western Division Court. Appellant was convicted of driving while under the influence of alcohol in violation of R.C. § 4511.19(A)(1), a misdemeanor of the first degree, and operating his vehicle in excess of the speed limit in violation of R.C. § 4511.21(D)(1). By agreement, the driving under the influence charge was tried before a jury. The trial court judge decided Appellant's speeding offense.
 {¶ 2} Appellant was fined $100 for his speeding violation. For his DUI offense, Appellant was sentenced to 180 days in jail with 177 days suspended and two years of probation. He was also ordered to enroll in a residential treatment program, to be credited toward his three days in jail. His license was suspended for two years, and he was issued a $900 fine and ordered to pay court costs.
 {¶ 3} On appeal, Appellant argues that the arresting officer did not have reasonable suspicion to stop and detain him; that the officer lacked probable cause to arrest him; and that the trial court violated his right to a speedy trial. Appellee has not submitted a brief on appeal. For the following reasons, however, Appellant's arguments on appeal lack merit and are overruled.
 {¶ 4} Appellant's first assignment of error asserts,
 {¶ 5} "THE ARRESTING OFFICER DID NOT HAVE REASONABLE SUSPICION OFCRIMINAL ACTIVITY TO STOP AND DETAIN THE APPELLANT"
 {¶ 6} In his first assignment of error, Appellant argues that the arresting officer did not have cause to stop Appellant's vehicle in the first place. Thus, he filed *Page 3 
a motion to suppress with the trial court. Following a hearing, the trial court overruled Appellant's motion to suppress. It found that Appellant's stop and arrest were proper and in accordance with law. (November 1, 2004, Judgment Entry.)
 {¶ 7} In reviewing a trial court's decision overruling a motion to suppress, an appellate court must review the facts only for clear error and accept the trial court's factual determinations if they are supported by competent, credible evidence. This is based on the fact that the trial court assumes the role of the trier of fact in considering a motion to suppress and as such, is in the best position to resolve factual questions and evaluate witness credibility. State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Then, and without deference to the trial court's conclusions, a reviewing court must assess whether the facts meet the appropriate legal standard as a matter of law. State v. Medcalf (1996), 111 Ohio App.3d 142, 145,675 N.E.2d 1268; State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7;In re Haubeil, 4th Dist. App. No. 01CA2631, 2002-Ohio-4095.
 {¶ 8} Accordingly, this Court must determine whether the officer in this case had reasonable suspicion that a crime was occurring or had been committed by Appellant. State v. Percy, 7th Dist. No. 04 MA 265,2006-Ohio-1285, ¶ 16, citing Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. In determining whether a reasonable suspicion existed, a court must consider the totality of the facts and circumstances. Id.
 {¶ 9} It has been held that if an officer observes a traffic violation, an investigatory stop is valid and cannot be unreasonable under the Fourth Amendment. *Page 4 Dayton v. Erikson (1996), 76 Ohio St.3d 3, 9, 11, 665 N.E.2d 1091. The police officer may then investigate the driver for driving under the influence if there is a reasonable suspicion that the individual is intoxicated based on specific and articulable facts. State v.Wooten, 11th Dist. No. 2004-L-084, 2006-Ohio-199.
 {¶ 10} In the case at bar, Ohio State Highway Patrol Officer Gary Wright testified at the suppression hearing that he observed Appellant's vehicle traveling in the opposite direction on U.S. Route 40 when he saw Appellant make an obscene gesture in the windshield. Wright turned to catch up with Appellant's vehicle, and he then witnessed Appellant's vehicle weaving onto the center line and speeding. Wright paced Appellant's vehicle in excess of the posted speed limit, and he later cited Appellant for speeding. (Oct. 19, 2004, Tr., pp. 5, 13.)
 {¶ 11} Based on the foregoing, Wright's observations alone were sufficient reasonable suspicion to perform the traffic stop. Wright witnessed Appellant exceeding the speed limit and he cited him as a result. State v. Robinette (1997), 80 Ohio St.3d 234, 239,685 N.E.2d 762.
 {¶ 12} However, Appellant takes issue with the method that Wright used to determine whether he was speeding. Appellant claims that Wright did not submit a proper foundation to support the method he used to pace Appellant's vehicle. Appellant argues that Wright failed to testify about the distance he paced Appellant's vehicle and the speed at which he paced Appellant's vehicle. As such, he claims that the testimony was inadmissible. *Page 5 
 {¶ 13} Contrary to Appellant's arguments, the transcript reveals that Wright explained that he paced Appellant by catching up to Appellant's vehicle and then driving the same speed. Wright stated that he used his radar to determine his vehicle's ground speed, and he also monitored his vehicle's speedometer. (Oct. 19, 2004, Tr., pp. 13-14.) Wright did not testify as to Appellant's actual speed or the distance at which he paced Appellant's vehicle. However, the trial court only needed to determine whether the stop was supported by a reasonable, articulable suspicion of criminal activity. It did not have to find evidence beyond a reasonable doubt. State v. Harris, 4th Dist. No. 03CA760, 2003-Ohio-3476.
 {¶ 14} Further, many Ohio courts have allowed an officer's visual determination as an acceptable manner for determining speed. State v.Horn, 7th Dist. No. 04 BE 31, 2005-Ohio-2930; State v. Wilson (1995),102 Ohio App.3d 1, 4, 656 N.E.2d 954; State v. Jones (Oct. 25, 2001), 5th Dist. No. CT2001-0033, 2. Thus, Wright's testimony in this case was sufficient, credible evidence to support a stop.
 {¶ 15} Appellant also argues that the videotape of Appellant's stop played at the suppression hearing does not support Wright's testimony. Contrary to Appellant's claims, however, Wright explained at the hearing that the videotape was not activated until after Appellant's traffic violation and that the tape ran out before the sobriety tests were performed. (Oct. 19, 2004, Tr., p. 11.)
 {¶ 16} Based on the foregoing, a review of the motion to suppress hearing transcript supports the trial court's decision. The facts support Wright's determination *Page 6 
that Appellant was speeding and giving him more than reasonable suspicion to perform the stop. Thus, this assignment of error is overruled.
 {¶ 17} Appellant's second assignment of error states,
 {¶ 18} "THE ARRESTING OFFICER DID NOT HAVE PROBABLE CAUSE TO ARRESTTHE APPELLANT"
 {¶ 19} Appellant argues that the arresting officer did not have probable cause to arrest him for driving while under the influence of alcohol in violation of R.C. § 4511.19(A)(1). This issue was also addressed at Appellant's motion to suppress hearing.
 {¶ 20} As previously discussed, Wright had reasonable and articulable suspicion to stop Appellant and to issue a speeding citation. Thus, we must determine whether Wright had probable cause to arrest Appellant for operating his vehicle under the influence.
 {¶ 21} Probable cause has been defined as facts and circumstances within the arresting officer's knowledge sufficient to warrant a prudent person's belief that the defendant committed the offense. State v.Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952. Courts must examine the totality of the facts and circumstances surrounding the arrest in making a probable cause determination in each driving under the influence case. Id.
 {¶ 22} Appellant argues that Wright's observations that Appellant smelled of alcohol and that he had glassy eyes were insufficient to constitute probable cause for his arrest for driving under the influence. Appellant also argues that his speeding *Page 7 
offense was nominal and that his field sobriety test results were not indicative of impairment. Thus, he claims that he should not have been arrested.
 {¶ 23} Appellant directs this Court's attention to State v. Finch
(1985), 24 Ohio App.3d 38, 492 N.E.2d 1254, in support of his argument. In Finch, the Twelfth District Court of Appeals held that the arresting officer lacked probable cause to arrest the defendant for a DU I offense. However, the officer in Finch had not witnessed the defendant driving in an unsafe manner nor had she observed that the defendant had impaired motor skills before making the arrest. Id. at paragraph two of the syllabus.
 {¶ 24} Unlike Finch, the record here reflects that Wright observed Appellant's vehicle speeding and swerving onto the center line. Wright pulled Appellant over, saw that Appellant's eyes were glassy and noticed that he smelled of alcohol. Wright had Appellant perform two field sobriety tests. Appellant presented six out of six clues on the horizontal gaze nystagmus (HGN) test and only one clue on the one-leg stand test. Under the national highway traffic safety administration standards, two clues are required in order to deem a test a failure. Thus, Appellant only "failed" the HGN test. Notwithstanding, Wright explained that Appellant's combined test results and other factors indicated that he was under the influence. (Oct. 19, 2004, Tr., pp. 5, 7, 11, 12.)
 {¶ 25} The Eleventh District Court of Appeals has held that, "the HGN test, * * * is the single most accurate field test in determining whether a driver is impaired by alcohol. * * * [And that f]our or more clues indicate that the driver's blood-alcohol *Page 8 
concentration is above the legal limit." State v. Walker,149 Ohio App.3d 296, 777 N.E.2d 279, 2002-Ohio-4362, ¶ 12, citing State v.Bresson (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330. Thus, the fact that Appellant had six out of six clues is significant.
 {¶ 26} Based on the totality of the circumstances, the indicia in the instant matter supported the trial court's determination that probable cause existed to arrest Appellant for driving under the influence. Appellant smelled of alcohol, his eyes were glassy, and he failed the HGN test. Further, Wright witnessed Appellant speeding and swerving onto the center line. The fact that Appellant passed the one-leg stand test and was able to exit his vehicle without difficulty were only two of several factors for the trial court to consider. As such, Appellant's second assignment of error lacks merit and is overruled.
 {¶ 27} Appellant's final assignment of error asserts,
 {¶ 28} "THE TRIAL COURT COMMITTED ERROR BY NOT GRANTING THEAPPELLANT'S MOTION TO DISMISS FOR A VIOLATION OF THE APPELLANT'S SPEEDYTRIAL RIGHTS"
 {¶ 29} The Ohio Constitution, Article I, Section 10, provides a criminal defendant the right to a speedy public trial by an impartial jury. Appellant claims that he was denied his right to a speedy trial and that the trial court should have dismissed the charges against him. As such, he claims that his convictions were contrary to law and must be reversed.
 {¶ 30} Ohio's speedy trial statute must be strictly construed against the state. State v. Singer (1977), 50 Ohio St.2d 103, 109,362 N.E.2d 1216. A defendant *Page 9 
establishes a prima facie case for dismissal once the statutory time limit has expired. State v. Butcher (1986), 27 Ohio St.3d 28, 30-31,500 N.E.2d 1368. At that point, the state has the burden to demonstrate any extension of the time limit. Id.
 {¶ 31} The proper standard of review in a speedy trial case is to count the number of days that have passed while determining which party is responsible for the delay as directed in R.C. §§ 2945.71 and 2945.72.State v. DePue (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745.
 {¶ 32} "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. § 2945.73(B).
 {¶ 33} R.C. § 2945.71 states in pertinent part,
 {¶ 34} "(B) Subject to division (D) of this section, a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial as follows:
 {¶ 35} "* * *
 {¶ 36} "(2) Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree * * *."
 {¶ 37} In the instant matter, Appellant's highest degree of offense charged, found in R.C. § 4511.19(A)(1), was a misdemeanor of the first degree. Thus, he should have been brought to trial within ninety days after his arrest. R.C. § 2945.71 (B)(2)(D). *Page 10 
 {¶ 38} R.C. § 2945.72 sets out matters which may extend the speedy trial time. Subsection H specifically extends an accused's speedy trial time by, "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"
 {¶ 39} Appellant was arrested on July 7, 2004. Thus, the time to bring Appellant to trial began to run on July 8, 2004, since the date of arrest is not included in the speedy trial computation. R.C. § 1.14; Crim.R. 45; State v. Steiner (1991), 71 Ohio App.3d 249, 250-251,593 N.E.2d 368. Appellant filed his demand for a jury trial on July 14, 2004.
 {¶ 40} On August 10, 2004, the record reveals that a pretrial was scheduled and the parties were present. However, on that same date, Appellant sought a continuance of the pretrial and it was reset for August 24, 2004. Thus, Appellant's speedy trial time ran from July 8, 2004, until August 10, 2004, for a total of 33 days. His time was tolled on August 10, 2004 as a result of his continuance. R.C. § 2945.72(H). Thus, Appellee had 57 remaining days within which to try Appellant.
 {¶ 41} On August 24, 2004, Appellant filed a motion requesting occupational driving privileges, which was granted that same date. The record also reveals that Appellant asked the court to continue his August 24, 2004, pretrial. His request was granted, and the pretrial was again reset to September 21, 2004. Thus, Appellant's time was tolled by these requests from August 11, 2004, until at least September 21, 2004. R.C. § 2945.72(H). *Page 11 
 {¶ 42} Appellant argues on appeal that the state should have been charged with the delay from August 10, 2004, to September 22, 2004. Contrary to Appellant's claims, though, the trial court's journals entries reflect that it was Appellant who sought two continuances of his pretrials — one on August 10, 2004, and the other on August 24, 2004. Thus, the time was chargeable to Appellant.
 {¶ 43} The pretrial was finally held on September 21, 2004. However, the trial court's record reflects that Appellant sought and was granted another 14 days to file certain pretrial motions at the hearing. Appellant subsequently filed his motion to suppress on October 6, 2004. The trial court held a hearing on his motion October 19, 2004, and issued its decision on November 1, 2004.
 {¶ 44} Appellant argues on appeal that the time from September 22, 2004, through October 5, 2004, was chargeable to the state.
 {¶ 45} However, pursuant to Crim.R. 12(C), a motion to suppress must be filed within 35 days after the defendant has been arraigned on the charges. Appellant was arraigned on July 8, 2004. Thus, he had to request leave to file his motion to suppress in this case since it was filed well beyond the 35-day time period. As a result, Appellant's motion for leave to file his motion to suppress tolled the statutory time for bringing him to trial. R.C. § 2945.72(H); State v.Brummett, 4th Dist. No. 03CA5, 2004-Ohio-231, ¶ 20, (finding that a motion for leave to file a motion to suppress tolls a defendant's speedy trial time.)
 {¶ 46} Based on this, Appellant's speedy trial time was tolled from August 11, 2004, until November 1, 2004, as a result of his two requests for continuances and *Page 12 
the delay caused by his leave, motion to suppress, and the hearing on this motion. R.C. § 2945.72(H); State v. Davis, 7th Dist. No. 01CA171, 2002-Ohio-2789 (holding that defendant's motion to suppress prior convictions and hearing on motion tolled speedy trial period.) His speedy trial time began to run on November 2, 2004.
 {¶ 47} The trial court's record reveals that it had erroneously set Appellant's case for a bench trial on November 17, 2004. To correct the mistake, the matter was reset for a jury trial on December 22, 2004.
 {¶ 48} In the meantime, however, Appellant was appointed new counsel, and on December 17, 2004, he sought to continue Appellant's trial. Thus, the jury trial was rescheduled to January 12, 2005. As such, the state was charged with 45 days of speedy trial time from November 2, 2004, through December 16, 2004. This left Appellee with 12 remaining speedy trial days (57 minus 45).
 {¶ 49} On January 4, 2005, Appellant again sought to continue his January 12, 2005, jury trial. It was reset for February 9, 2005. On February 7, 2005, the record reveals that Appellant's counsel advised the court that Appellant intended to enter a plea agreement and waive trial. Thus, plea proceedings were scheduled in lieu of Appellant's February 9, 2005, trial. However, Appellant subsequently declined to plea and demanded a jury trial. On that same date, Appellant asked the court to dismiss the charges against him for the denial of his right to a speedy trial. The trial court denied Appellant's motion. (February 9, 2005, Journal Entry.) *Page 13 
 {¶ 50} Based on the foregoing, Appellant's speedy trial time was tolled from December 17, 2004, until the new trial date that resulted from his continuances, his plea hearing, and his motion to dismiss. R.C. § 2945.72(E)(F).
 {¶ 51} Appellant's jury trial was held as scheduled on March 10, 2005. Based on the record, the state still had 12 remaining trial days within which to try Appellant, thus, he was not denied his right to a speedy trial in violation of R.C. § 2945.71 and the Constitution. Appellant's final assignment of error also lacks merit and is overruled.
 {¶ 52} In conclusion, Appellant's assignments of error are overruled in their entirety, and the trial court's judgment is hereby affirmed in full.
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1